UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT ENERSON,

                    Plaintiff,

vs.                                  Case No.  2:09-cv-316-FtM-36SPC

ROBERT C. JOENS, Warden, DeSoto
Correctional Institution, RONALD
HOLMES, Assistant Warden-Programs,
DeSoto Correctional Institution,
SANDRA PETERSON, Health Care
Administrator, DeSoto Correctional
Institution, JACQUES FELIPE LAMOUR,
Chief Medical Officer, DeSoto
Correctional Institution,

                    Defendants.
_____/

**OPINION AND ORDER**

I.

     This matter comes before the Court upon review of the Motion

for Summary Judgment filed on behalf of Defendant Dr. Lamour (Doc.

#76, Lamour Motion) on January 5, 2011.  In support of the motion,

Defendant attaches his affidavit (Exh. A, Aff. Lamour).  The Court

also reviews the Motion for Summary Judgment filed on behalf of

Defendants Holmes, Joens, and Peterson (Doc. #82, DeSoto

Defendants' Motion), who each attach their respective affidavits

(Exh. A, Aff. Joens; Exh. B. Aff. Holmes; Exh. C. Aff. Peterson).

Plaintiff, who is proceeding *pro se* and is currently a prisoner,

filed responses in opposition to each motion (Doc. #83, Response

Lamour; Doc. #85, Response Officers). These matters are ripe for review.[1]

## II.

Plaintiff brings this action against the following Defendants from the Desoto Correctional Institution: Robert Joens, Warden; Ronald Holmes, Assistant Warden-Programs; Sandra Peterson, Health Care Administrator; and Doctor Jacques Felipe Lamour, Chief Medical Officer, in their individual and official capacities. Amended Complaint at 1-3.

The Amended Complaint alleges a violation of Plaintiff's Eighth Amendment rights stemming from the Defendants alleged deliberate indifference to the injuries he sustained from a ceiling fan that fell on him, rendering him unconscious, on July 9, 2008. Amended Complaint at 3-4. The day of the incident Plaintiff states

---

[1]Plaintiff submitted several motions to compel in this case. *See* Doc. #62 (November 5, 2010 Order, granting in part and denying in part Plaintiff's motion to compel); Doc. #66 (November 19, 2010 Order, after a discovery hearing, *inter alia* directing defense counsel to assist Plaintiff with gathering copies of relevant medical records); Doc. #88 (April 27, 2011 Order, granting in part and denying in part Plaintiff's motions to compel). In the April 27, 2011 Order, the Court advised Plaintiff that, upon his receipt of the discovery from Defendants, Plaintiff could notify the Court, within seven days, to advise whether he wanted to file amended responses to the Defendants' respective Motions, or whether he wanted to submit copies of the relevant discovery as exhibits to his response. Doc. #88 at 9. The Court subsequently granted Defendants a ten-day extension of time to comply with the April 27, 2011 Order. Plaintiff did not notify the Court that he wished to amend his responses and the time to do so has expired. *See* docket. The Court had also previously warned Plaintiff of the parameters of Fed. R. Civ. P. 56. *See* Doc. #16.

that photographs were taken of the ceiling, the fan, and his injuries. Plaintiff remembers that he was taken to medical and given a bag of ice for his facial swelling and two Ibuprofen. *Id.* at 3. On July 10, 2008, Doctor Lamour evaluated Plaintiff's condition. *Id.* at 4. Plaintiff states that he complained of pain in his face, neck, and shoulder blades, and had a "splitting headache." *Id.* After the doctor left, the nurse gave Plaintiff a medical pass for ice for three days, a plastic bag, and a medical pass for a liquid diet. *Id.* At that point, Plaintiff states that he complained about the inadequacy of the medical treatment he received.[2] *Id.*

On July 12, Plaintiff went to sick-call for his injuries, complaining of pain in his jaw, neck, shoulder, and head, as well as having constant ringing in his ear. *Id.* Plaintiff states that the nurse provided him a "no work pass" for four days and an extension on the ice pass. *Id.* at 5. Plaintiff contends that he remained in "so much pain," without medical treatment, that he tried to alleviate the pain himself by taking medication from

_____

[2]According to the Amended Complaint, Plaintiff also encountered difficulties with the Food Services Department honoring his liquid diet. Plaintiff states that he showed his medical pass for a liquid diet to the Food Services Manager, but the Manager refused to honor his medical pass. After a corrections officer sergeant intervened, Plaintiff states food services provided him with an apple juice and a carton of milk. *Id.* at 5. Plaintiff names no defendant from food services in this action.

another inmate.  Plaintiff states that he was caught and given a disciplinary report.  *Id.* at 6.

On July 14, 2008, the Medical Department performed an x-ray of Plaintiff's face, which by this time Plaintiff submits was swollen and discolored.  *Id.*  Plaintiff states when he attempted to tell the technician that the x-ray was being done on the wrong side of his face, the technician, using expletives, told him to "shut up." *Id.*

Plaintiff submits that as of the date he filed his Amended Complaint the injuries he sustained from the ceiling fan were not "properly diagnosed or treated."  Plaintiff avers that "under the singular authority of Defendant, Warden Robert C. Joens, that inmates will not be given medical treatment when it can be avoided, as the cost for that medical treatment would be "excessive."  *Id.* at 8.

### III.

Defendants Lamour, Joens, Holmes, and Peterson move for summary judgment.  "Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart,* 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted).  *See also*, Fed. R. Civ. P. 56(c)(2).  "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there

is a lack of evidence to support the essential elements that the non-moving party must prove at trial." *Moton*, 631 F.3d at 1341 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor. To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, *i.e.*, affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. *Beard*, 548 U.S. at 529 (citations omitted); *Shotz v. City of Plantation, Fl.*, 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002)

(citations omitted).   Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact.  *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).   In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.  *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

To survive a properly supported motion for summary judgment on claims of deliberate indifference, a plaintiff must produce evidence from which a reasonable jury could conclude: (1) that he had an objectively serious medical need, (2) that defendants acted with deliberate indifference to that need, and (3) that his injury was caused by defendants' wrongful conduct.  *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).  To show that defendants were deliberately indifferent to his medical needs under the second prong of the *Goebert* test, plaintiff must offer some proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence."  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th

Cir. 1999); *Goebert* at 1327.  A complete denial of readily available treatment for a serious medical condition obviously constitutes deliberate indifference.  *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994).

Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable.  *See Id.* at 393-94; *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990).  A plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *abrogated in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002)); *see also Farrow v. West*, 320 F.3d 1235, 1244 n. 12 (11th Cir. 2003) ("In *Hope v. Pelzer*, 536 U.S. 730 (2002) . . . the Supreme Court criticized part of the qualified immunity analysis in *Hill*, but not *Hill*'s analysis of what constitutes a serious medical need of prisoners.").

The Eleventh Circuit has also held that deliberate indifference may be established by a showing of grossly inadequate care, as well as by a decision to take an easier but less

efficacious course of treatment. *See Steele v. Shah*, 87 F.3d 1266, 1269-70 (11th Cir. 1996); *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). With these precedents in mind, the Court turns to the Defendants' Motions.

### A. Defendant Dr. Lamour

Defendant Lamour moves for judgment as a matter of law, and submits that Plaintiff has neither shown that his medical condition was serious, nor has he shown that he acted with deliberate indifference to Plaintiff's serious medical condition. Lamour Motion at 9-10. Lamour also claims that Plaintiff failed to establish a causal connection between Lamour and the alleged violation. *Id.* at 10. In the alternative, Defendant Lamour argues that Plaintiff has failed to establish a basis for liability on the theory of negligence. Defendant further claims that he is entitled to qualified immunity, and that Plaintiff is not entitled to punitive damages. *Id.* at 11.

### 1. Deliberate Indifference to a Serious Medical Condition

Defendant Lamour first asserts in his Motion that Plaintiff "has not brought forth any evidence that would satisfy the objective standard that a serious medical need existed." Lamour

Motion at 10.  Defendant Lamour cites to no case law supporting his argument that a head injury that rendered Plaintiff unconscious; a swollen, discolored jaw; ringing in the ears; splitting headache; and, experiencing severe pain does not amount to a serious medical condition.  *See generally* Lamour Motion.   In Response, Plaintiff reiterates that the treatment Defendant Lamour provided to him was only cursory treatment and therefore amounted to no treatment at all.  Response at 15.  Plaintiff refers the Court to his Amended Complaint and grievances attached thereto, and states that on July 9, 2008, a thirty-pound ceiling fan fell from twenty-five feet in the air onto his head, rendering him unconscious, and causing injury to the left side of his face, neck, shoulder, and spine. *Id.* at 14-15; Amended Complaint at 3.  After being brought back to consciousness by the shift commander, the captain immediately ordered that Plaintiff be taken to the medical department.  *Id.* Plaintiff saw a nurse in the medical department who issued Plaintiff a bag of ice for swelling to his face, and gave him two ibuprofen.  *Id.*  Plaintiff states that he saw Defendant Lamour for a medical appointment the day after the incident, on July 10, when he told Lamour that the ceiling fan fell on him, rendering him unconscious, that he was experiencing pain in his face, neck, shoulder blades, had a splitting headache, and that he was experiencing ringing in his ears.   In response to Plaintiff's ailments, Defendant Lamour continued the bag of ice to reduce the

swelling for three days and gave him two Tylenol.  Response at 15;
Amended Complaint at 3.  Plaintiff submits that he remained in "so
much pain" and that his jaw became swollen and discolored, so he
went back to the medical department on July 12 and saw the nurse.
Plaintiff acknowledges that he was eventually given an x-ray of his
face on July 14, but submits that the x-ray was done on the right
side of his face, not the left side of his face where he sustained
the injuries.  Amended Complaint at 6.

     The Court recognizes that "[a] serious medical need is 'one
that has been diagnosed by a physician as mandating treatment or
one that is so obvious that even a lay person would easily
recognize the necessity for a doctor's attention.'"  *Youmans v.
Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010)(quoting *Hill v. Dekalb
Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994),
*overruled in part on other grounds by Hope v. Pelzar*, 536 U.S. 730,
739 (2002)).  "In general, serious medical needs are those
"requiring immediate medical attention."  *Id.* (quoting *Hill*, 40
F.3d 1190).  Additionally, "'a serious medical need is one that, if
left unattended, poses a substantial risk of serious harm.'"  *Mann
v. Taser Intern., Inc.*, 588 F.3d 1291, 1307 (11th Cir.
2009)(citation omitted).

     The summary judgment record before the Court is limited, at
best, and does not include any of the Plaintiff's medical records,
or what Defendant Lamour's diagnosis was of Plaintiff's medical

condition, if any.  The record only contains the symptoms Plaintiff experienced after being knocked unconscious.   Significantly, the correctional officers who first responded to the incident recognized that Plaintiff needed to be immediately sent to the medical department. *See Mann*, 588 F.3d at 1307-08 (recognizing a serious medical need is one that is apparent to the untrained eye of a layperson).  Based on the foregoing, the Court cannot conclude as a matter of law that Plaintiff's medical condition did not constitute a serious medical condition. *See Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990)(citations omitted) (delaying treatment of a broken jaw or broken ankle for a period of hours amounted to a constitutionally cognizable injury); *Carter v. Fagin*, 363 F.Supp.2d 661, 663 (S.D.N.Y. 2005)(finding a jaw condition that caused "great pain" constituted a serious medical condition); *Snoussi v. Bivona*, 2010 WL 3924683 (E.D.N.Y. 2010)(finding a concussion, bruising, swelling, and pain that lasted for several days constituted a serious medical condition and failure to provide treatment for the condition set forth deliberate indifference).   Therefore, the Court finds that the record establishes that Plaintiff had an objectively serious medical condition.   Consequently, the Court now addresses whether a question of material fact remains as to whether Defendant Lamour acted with deliberate indifference to Plaintiff's serious medical condition.

-11-

Plaintiff claims that Defendant Lamour was aware of his serious medical condition, but only provided him with two Tylenol and an ice bag pass for three days. Response at 15. Five days after the incident, after continuing to complain about the pain, Plaintiff states he was provided an x-ray, but the x-ray was done on the wrong side of his face. The record contains no information as to whether Defendant Lamour ordered the x-ray for Plaintiff. Plaintiff claims that after he was given the x-ray, Defendant Lamour "inquired as to [his] welfare in a snide and facetious manner, and when the Plaintiff went on to try to speak to [Defendant Lamour], [Lamour] walked away, completely ignoring the Plaintiff. . . . ." Amended Complaint at 6.

Absent Plaintiff's medical visit on July 10 with Defendant Lamour, as set forth in the Amended Complaint, the record is devoid of any evidence showing that Defendant Lamour saw the Plaintiff after July 10, or provided further treatment to Plaintiff's serious medical condition. *See* Lamour Motion; Aff. Lamour. Defendant Lamour disputes Plaintiff's allegations, and in his affidavit submits that he exercised "his medical judgment and opinion when reviewing Plaintiff's requests for medical care." Aff. Lamour at 2. Yet, Plaintiff alleges he remained in severe pain for days after the ceiling fan fell on him. Moreover, Plaintiff experienced such pain that he risked disciplinary action by taking another inmate's pain medication. Lamour's affidavit only contains the

-12-

legal conclusion that he was never "deliberately indifferent to the Plaintiff's medical needs." *Id.*   Plaintiff, in fact, claims that he still experiences pain from the incident.   Response at 7.

Case law establishes that deliberate indifference may be established by a showing of grossly inadequate care, as well as by a decision to take an easier but less efficacious course of treatment. *Steele*, 87 F.3d at 1269-70; *Waldrop*, 871 F.2d at 1035. And, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Mandel*, 888 F.2d at 789; *Ancata,* 769 F.2d at 704.   Thus, contrary to Defendant's argument, a causal connection is clearly alleged based on Plaintiff's allegation that Defendant Lamour's cursory treatment of his medical condition amounted to no treatment at all.   Based on the record before the Court, the Court cannot conclude as a matter of law that the medical care Defendant Lamour rendered to Plaintiff, or lack thereof, did not amount to deliberate indifference.   Therefore, the Court must deny Defendant Lamour's Motion as to Plaintiff's Eighth Amendment claim, in both his individual and official capacities.[3]

---

[3]The Court notes that Plaintiff pursues his claims against the Defendants in their individual and official capacities.   *See* Amended Complaint at 2-3; *see also* Doc. #45 and Doc. #54 (mentioning that claims are against Defendants in their official and individual capacities).

**2.  Negligence Claim**

Defendant Lamour submits that Plaintiff has failed to establish liability under § 1983 on the theory of negligence. Lamour Motion at 11-12.

The Court finds that the Amended Complaint does not allege a negligence claim.  Plaintiff filed this action pursuant to 42 U.S.C. § 1983 "for a deprivation of the Eighth Amendment civil rights under color of State Law."  Amended Complaint at 1.  No where does Plaintiff allege that Defendant Lamour acted negligently.  *See generally  Id.*   Therefore, the Court denies Defendant Lamour's Motion, as frivolous, with respect to his claim that Plaintiff has not set forth a negligence claim.

**3.  Qualified Immunity**

Defendant Lamour argues that he is entitled to qualified immunity.  Lamour Motion at 12-14.  Lamour submits that he was an employee of the Florida Department of Corrections at the time the alleged claims arose and was acting "in his discretionary authority as a medical doctor."  *Id.* at 14.  Defendant further states "[t]he evidence submitted to this Court through this Motion demonstrates unequivocally that the Defendant's conduct was justified, as the Defendant acted in accordance with this professional judgment after taking into consideration the Plaintiff's medical needs."  *Id.*

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Youman v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010)(citations omitted).   "'Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.'" *Id.* (quoting *Pearson*, 129 S.Ct. 818).

To be eligible for qualified immunity, state officials must demonstrate that they were acting within the scope of their discretionary authority. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004).  "To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook are the type that fell within the employee's job responsibilities." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004)(internal quotation marks omitted).  If it is undisputed that the officials acted within their discretionary authority, then the burden shifts to the plaintiff to show that qualified immunity should not apply. *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009).  In this case Plaintiff does not dispute that Defendant Lamour was acting in his discretionary authority. *See* Response.

"In analyzing the applicability of qualified immunity, the Court has at its disposal a two-step process.  Traditionally, a

court first determines whether the officer's condition amounted to a constitutional violation.   Second, the court analyzes whether the right violated was clearly established at the time of the violation."   *Id.* (citation omitted); *but see Pearson v. Callahan*, 555 U.S. 223 (2009)(stating that, while the two-step inquiry is "often appropriate," it is not "mandatory in all cases").   In this case it seems best to proceed directly to the question of whether the applicable law was already clearly established when the incident took place.

The Court finds the law applicable to these circumstances was already clearly established at the time of the alleged violation. "A judicial precedent with materially identical facts is not essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans*, 626 F.3d at 563 (citing *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005)). In this case, the question here is whether a reasonable doctor in the same circumstances and possessing the same knowledge as Defendant Lamour could have concluded that his actions were lawful, i.e., not deliberately indifferent to Plaintiff's medical needs.   As discussed above, the record is unclear regarding what, if any, actions Defendant Lamour took to treat Plaintiff's serious medical condition, besides extending a pass for ice for three days and

providing 2 Tylenol to Plaintiff, after Plaintiff had been knocked unconscious by a ceiling fan falling from a height of 25 feet onto him.   It is clearly established law that grossly incompetent medical care or the choice of an easier but less efficacious course of treatment can constitute deliberate indifference. *Steele*, 87 F.3d at 1269-70; *Waldrop*, 871 F.2d at 1035.  And, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Mandel*, 888 F.2d at 789; *Ancata,* 769 F.2d at 704. In this case, the record is devoid of material facts and there remains a dispute of material facts regarding the treatment Defendant Lamour provided to Plaintiff and whether that treatment, if any, amounted to deliberate indifference.  Therefore, the Court denies Defendant Lamour's summary judgment motion on this issue.

### 4.  **Punitive Damages**

Defendant Lamour submits that Plaintiff is not entitled to punitive damages because he has not alleged the type of conduct that would meet the standard set forth in *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Lamour Motion at 14. Defendant submits that "[t]he Plaintiff does not prove or give any evidence that the Defendant acted with an evil motive or intent against the Plaintiff." *Id.* at 14-15.

In Response, Plaintiff states he is entitled to punitive damages.  Response at 11.  Plaintiff states that "[a] thorough

reading of the initial complaint will show that the Defendant not only knew that his actions were violative of the Constitution, but that he did it purposefully, maliciously, and with a reckless and callous indifference to the federally protected rights of the Plaintiff." *Id.*

Plaintiff seeks punitive damages as relief in this action. Amended Complaint at 9.   According to the Amended Complaint, Defendant Lamour rendered cursory treatment to Plaintiff's serious medical condition. Days later, after Plaintiff had an x-ray, Plaintiff claims Lamour asked him in a "snide and fictitious" manner how Plaintiff was feeling and then ignored Plaintiff's response.   Defendant Lamour does not present any evidence to contradict Plaintiff's specific allegations.   If a reasonable jury could find that the defendant acted with malice or callous indifference, then the issue of punitive damages should be submitted to the jury with proper instructions.   Therefore, the Court will deny Defendant Lamour's Motion on the issue of punitive damages.

### B.   Defendants Joens, Holmes, and Peterson

According to the Amended Complaint, Plaintiff attributes liability to Defendants Joens, the former warden, and Holmes, the former assistant warden, based on their supervisory positions over Defendant Lamour.   Amended Complaint at 2 (stating Warden Joens is "responsible for the enforcement of all rules" and Assistant Warden

Holmes is "directly responsible for the Medical Department's Operation, as the responsibility falls under the umbrella of his professional responsibility"). Plaintiff also attributes liability on Defendants based on their receipt of his inmate grievances outlining the deficiencies he encountered with the treatment of his medical condition by the medical department. *See Id.* at 5. (stating that on July 12, 2008, Plaintiff filed an "emergency grievance" "outlining the failure of the Medical Department to address his medical problems" to Defendant Joens); *Id.* at 6 (stating that on July 14, Plaintiff submitted an inmate grievance to Defendant Holmes outlining his issues with medical).

Defendants move for summary judgment and first submit that it appears Plaintiff attempts to improperly attribute liability to them on the theory of *respondeat superior*. Desoto Motion at 3. Defendants also submit that Plaintiff misstates the Defendants' respective responsibilities. *Id.; see also* Aff. Joens, Aff. Holmes, Aff. Peterson. Defendants further aver that case law prohibits Plaintiff from attributing liability on Defendants for their respective responses to his grievances. Amended Complaint at 4.

Indeed, there is no *respondeat superior* liability in § 1983 actions. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-692 (1978); *Quinn v. Monroe County*, 330 F.3d 1320, 1325 (11th Cir. 2003); *Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). Thus, to

the extent Plaintiff attempts to attribute liability on these Defendants based solely on their supervisory roles under a theory of *respondeat superior*, the Defendants' Motion is granted. Additionally, Plaintiff appears to attribute liability to these Defendants for alleged failure to comply with certain regulations governing the Department of Corrections facilities. However, a failure to comply with internal prison policies, does not amount to a constitutional violation.

Supervisory liability can be imposed under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). A causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," or when the supervisor's improper "custom or policy . . . resulted in deliberate indifference to constitutional rights." *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). To impute a supervisor with knowledge, the knowledge "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1542 (11th Cir. 1994). A causal connection can also be established by facts which

support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1561 (11th Cir. 1993).

Here, Plaintiff does not allege that Defendants Joens, Holmes, or Peterson personally participated in depriving him of medical care. Instead, Plaintiff claims that pursuant to Defendant Warden Joens' "policy," "inmates would not be given medical treatment when it [could] be avoided" to save money. Amended Complaint at 8. Plaintiff similarly claims that Defendant Peterson was the "architect" of the policy to avoid costs and identifies her as the "budget advisor" for the medical department. *Id.* Plaintiff attributes liability on Defendant Holmes for following Joens' aforementioned policy. *Id.*

Defendants dispute Plaintiff's allegations and provide evidence in the form of their affidavits to support their position. Defendants Joens and Holmes submit that as the Warden and Assistant Warden, respectively, they were not involved in any medical decisions. Aff. Joens at 1; Aff. Holmes at 1. Instead, Defendants submit that medical care was provided exclusively by the health care providers under the direction of the chief medical officer, Defendant Lamour. *Id.* Defendants Joens and Holmes acknowledge that the extent of their involvement with Plaintiff's medical condition at issue was that they responded to his inmate

grievances.   Specifically, Defendants state that they directed Plaintiff's medical grievances to the medical department for review and in order to gather information from the medical department before responding to the grievance.   Aff. Joens at 2; Aff. Holmes at 2.

Similarly, Defendant Peterson, as the health care administrator, submits that her exclusive responsibility was over the administrative aspects of the delivery of health care to all inmates.   Aff. Peterson at 1.   Defendant Peterson states that she reported to the chief medical officer, Defendant Lamour.   *Id.* Defendant Peterson acknowledges that her only involvement with Plaintiff's medical condition at issue in this case would have been to respond to any medical grievances that Plaintiff directed to her attention.   *Id.* at 2.   Defendant Peterson states that she would first direct such a grievance to the medical providers for review, and then she would respond as the medical providers' deemed appropriate.   *Id.*

Plaintiff asserts in his response, that Defendants Joens and Holmes "ha[d] direct professional authority" over the administration of medical services.   Response at 5.   Plaintiff, however, provides no evidence to support his conclusory allegations, or to dispute the Defendants' evidence.   Plaintiff cites no specific policy or memorandum issued by Defendant Joens detailing that medical care should not be provided to inmates to

avoid costs.  To the extent Plaintiff intended to allege that Defendants Joens and/or Peterson had a custom or practice of denying medical care to inmates to avoid costs, Plaintiff attaches no evidence of widespread abuse that put Defendants on notice, nor does he even make any allegations that fellow inmates were denied medical care based on cost.  *See* Amended Complaint; Response; *see Goebert*, 510 F.3d at 1332 (stating "'[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'")(quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Further, as evidenced by the Defendants' respective affidavits, Defendants did not oversee the medical department.  Instead, the Regional Medical Director, who is not a named defendant in this action, was Defendant Lamour's supervisor.  Aff. Holmes at 2.

To the extent Plaintiff attributes liability on Defendants Joens, Holmes, or Peterson based on the grievances he filed with them, the Defendants' respective affidavits show that their practice was to forward an inmate grievance concerning a medical matter to Defendant Lamour before responding.  *See generally* Aff. Joens, Aff. Holmes, Aff. Peterson.  The Court notes that of the inmate grievances Plaintiff attaches to his Amended Complaint,

several do not contain a response from prison officials.[4]  *See* Doc. #18-2 at 1-2, 5-6.  Significantly, only one inmate grievance dated July 16, 2008, addressed to "Mr. Holmes" includes a response from Defendant Peterson, and is signed by Defendant Holmes.  *Id.* at 7.  The response from Defendant Peterson states as follows:

> A check with the medical staff revealed that you have been carefully and thoroughly evaluated for your injury. This includes x-rays and other appropriate medical assessments.  You were placed in the infirmary for observation.  After the doctor reviewed your case he determined that you could be released and returned to the population.  The injury may leave some residual discomforts (i.e. swelling and soreness) which can be reported to the medical staff.  Otherwise, there are no indications that your care has been less than appropriate.  For these reasons this informal grievance is denied.

*Id.* Based on the foregoing, the Court finds the record contains no questions of material fact as to Defendants Joens, Holmes, and Peterson.  The record conclusively establishes that Defendants Joens, Holmes, and Peterson were neither personally involved with the provision of medical care to Plaintiff, nor did they oversee the provision of medical care to Plaintiff.  The record also reveals that Defendants Joens and Peterson did not establish a policy or custom of depriving medical care to Plaintiff because of the associated costs.  Therefore, the Court grants the Motion for

---

[4]Plaintiff does not allege that officials never responded to his inmate grievances.  Instead, it appears Plaintiff submits with his Amended Complaint incomplete grievances that do not contain the response from prison officials.

Summary Judgment filed on behalf of Defendants Joens, Holmes, and Peterson in both their individual and official capacities.

ACCORDINGLY, it is hereby

**ORDERED**:

1.   Defendant Lamour's Motion for Summary Judgment is **DENIED** for the reasons set forth herein.  Defendant Lamour and Plaintiff shall participate in a mandatory settlement conference before the United States Magistrate Judge, with details contained in a forthcoming order.

2.   The Motion for Summary Judgment filed on behalf of Defendants Joens, Holmes, and Peterson is **GRANTED** in their individual and official capacities.  These Defendants are dismissed from this action with prejudice.

3.   The Clerk of Court shall enter judgment accordingly and correct the caption of this action.

**DONE AND ORDERED** at Fort Myers, Florida, on this 20th day of July, 2011.

Charlene Edwards Honeywell
United States District Judge

SA: alj

Copies: All Parties of Record